IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| MAURY COUNTY, TENNESSEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 1:24-cv-00110 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| CITY OF COLUMBIA, TENNESSEE, ) | MAGISTRATE JUDGE HOLMES |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant City of Columbia, Tennessee's ("Columbia") Motion to Stay Case Pending Arbitration, to Compel Arbitration, and to Dismiss the Action for Failure to State a Claim. (Doc. No. 16). Plaintiff Maury County, Tennessee ("Maury County") filed a response in opposition (Doc. No. 19), and Columbia filed a reply (Doc. No. 20).

For the reasons discussed below, Columbia's motion (Doc. No. 16) is **GRANTED** in part and **DENIED** in part.

### I. FACTUAL BACKGROUND

Maury County operates a public water utility system through the Mary County Water System ("MCWS"). (Doc. No. 1 ¶ 5). Columbia operates a public water utility system through Columbia Power & Water Systems ("CPWS"). (*Id.* ¶ 7).

There are two parcels of land within Maury County designated as Map 92, Parcels 12.00 and 12.05 ("Parcel 12.00" and "Parcel 12.05"). (*Id.* ¶ 14). MCWS has a water main that runs next to Parcel 12.00 and a water pumping station located directly on Parcel 12.00. (*Id.* ¶¶ 16-17). MCWS provided water service to Parcel 12.00 from its water main and still has a water meter on the parcel. (*Id.* ¶ 18). Bear Springs, LLC acquired ownership of Parcel 12.00 in 2021 and applied for water service to a new residential development on Parcel 12.00 in 2022. (*Id.* ¶¶ 19, 20). MCWS

issued a letter indicating that it could provide water service to the proposed development. (*Id.* ¶ 21). CPWS subsequently engaged in discussions with the developer about providing water to the proposed development, and the developer stopped communicating with MCWS about water service. (*Id.* ¶ 22). CPWS "offered to serve water to Phase 1 upon the installation of new water lines, dedication of the new water lines to CPWS, and the payment of hundreds of thousands of dollars in fees to CPWS," and "CPWS has accepted hundreds of thousands of dollars in fees to provide water service to Phases 1A and 1B" of the development (*Id.* ¶¶ 24-25). Bear Springs, LLC conveyed part of Parcel 12.00 to a third party and was given a separate designation, leaving approximately 80.3 acres in Parcel 12.00. (*Id.* ¶¶ 26-27). CPWS and the Tennessee Department of Environment and Conservation approved water line plans for Phases 1A and 1B of the development located on Parcel 12.05, and did not consult MCWS. (*Id.* ¶ 30). CPWS and the developer intend for CPWS to provide water service to Phases 1A and 1B of the development. (*Id.* ¶ 32).

Another parcel of land within Maury County is designated as Map 74, Parcel 37.00 and consists of approximately 98.66 acres ("Parcel 37.00"). (*Id.* ¶ 34). Maury County has a water main that runs alongside Parcel 37.00 and part of the water main is located directly on Parcel 37.00. (*Id.* ¶¶ 34-35). MCWS provides water service to Parcel 37.00 from the water main and has multiple water meters on the parcel. (*Id.* ¶ 36). In 2021, a developer applied to MCWS for water service to a new residential development on Parcel 37.00. (*Id.* ¶ 37). MCWS issued letters indicating that it could provide water services to the proposed development. (*Id.* ¶ 38). CPWS subsequently engaged in discussions with the developer about providing water to the proposed development, and the developer stopped communicating with MCWS about water service. (*Id.* ¶ 39). CPWS issued a letter for Phase 1 of the development, "offered to serve water to Phase 1 upon the

installation of new water lines, dedication of the new water lines to CPWS, and the payment of hundreds of thousands of dollars in fees to CPWS," and "accepted at least tens of thousands of dollars in fees to provide water service to Phase 1 of" the development. (*Id.* ¶¶ 41-42). Both CPWS and the developer intend for CPWS to provide water service to the development. (*Id.* ¶ 44).

Maury County brings claims against Columbia for violations of 7 U.S.C. § 1926(b) and 42 U.S.C. § 1983 and requests a declaration that "Maury County has the exclusive right to serve the new developments," that "Columbia [be enjoined] from encroaching on Maury County's service area," and an award of "damages, attorney's fees, and costs." (*Id.* ¶¶ 1, 46-59).

Columbia moved for dismissal under Fed. R. Civ. P. 12(b)(6) on the grounds that Maury County's claims are subject to an arbitration agreement between the parties. (Doc. No. 16).

## II.  STANDARD OF REVIEW

9 U.S.C. § 2 provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA "expresses a strong public policy favoring arbitration of a wide class of disputes." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005) (quoting *Cooper v. MRM Invest. Co.*, 367 F.3d 493, 498 (6th Cir. 2004)). Moreover, "[t]he language of the agreement must be viewed in light of the 'strong federal policy in favor of arbitration.... Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.'" *Wilks v. Pep Boys*, 241 F. Supp. 2d 860, 863 (M.D. Tenn. 2003) (citing *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir.2000), *cert. denied,* 531 U.S. 1148, 121 S. Ct. 1088, 148 L.Ed.2d 963 (2001)).  The Court considers the validity of the agreement to arbitrate separate from the validity of the contract as a whole. *See Arnold v. Arnold Corp-Printed Comm. for Business*, 920 F.2d 1269, 1277-78 (6th Cir. 1990) (citing *Prima Paint v. Flood & Conklin Mfg. Co.*, 388

3

U.S. 395 (1967)) (stating that arbitration clauses as a matter of federal law are "separable" from the contracts in which they are imbedded). While a general challenge to the enforceability of the contract as a whole must be decided by the arbitrator, a specific challenge to the arbitration agreement itself must be decided by the court before it compels arbitration. *See Anderson v. Charter Comm., Inc.*, 2021 WL 2396231, at *2 (6th Cir. Jun. 11, 2021) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-45 (2006)).

The Supreme Court has recognized that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019) (internal citations omitted). Moreover, "when parties have agreed to arbitrate 'arbitrability,' a court may not disregard their agreement—even if a particular argument for arbitration seems to be 'wholly groundless.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (internal citation omitted). Typically, Courts turn to state law to interpret arbitration agreements. *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 601 (6th Cir. 2016) (internal citations omitted) ("'[T]he interpretation of an arbitration agreement is generally a matter of state law.' Accordingly, we 'apply[ ] general state-law principles of contract interpretation to the interpretation of an arbitration agreement.'"). However, when considering questions of "arbitrability," the Supreme Court has held that "there must be 'clear and unmistakable evidence' that the parties agreed to have an arbitrator decide such issues." *Blanton*, 962 F.3d at 844. "In effect, this rule reverses the usual presumption in favor of arbitration when it comes to questions of 'arbitrability.'" *Blanton*, 962 F.3d at 844.

### III. ANALYSIS

Columbia moved to dismiss Maury County's claims in favor of arbitration based on a water purchase contract that MCWS and CPWS entered into on August 30, 1976 (the "Water Purchase Contract"). Columbia contends that the parties subsequently executed an amendment to the Water Purchase Contract, which provides as follows:

> If County and System are unable to agree on any issues or any question arising under the Water Purchase Contract dated August 30, 1976, or any amendment thereto, including this Amendment to Water Purchase Contract, and including disputes concerning availability of additional water, and methods for fairly and equitable sharing costs between County and System for capital improvements in the System's water facilities to provide additional water to any of the existing or future metering points to County, but specifically excluding the rate or rates for water service, it is agreed that prior to instituting suit against the other party, both parties shall seek arbitration of such disputed issues or questions…"

(Doc. No. 17 at 1-2; Doc. No. 17-1 at PageID# 111). Columbia contends that Maury County's claims are based on the Water Purchase Contract and its amendments and that Maury County "executed a binding agreement to arbitrate any and all disputes related to the Water Purchase Contract and its amendments." (Doc. No. 17 at 2). Both parties agree that CPWS and MCWS are not separate legal entities but are "arms" of their respective governmental entities. (Doc. Nos. 23, 24).

In response, Maury County argues that the Complaint does not mention or involve the Water Purchase Contract and involves only "whether Maury County's protections afforded by § 1926(b) allow it, and not Columbia to serve the disputed developments." (Doc. No. 19 at 2). Maury County also contends that the FAA does not apply to contracts between local governmental authorities involving water provision services within a single county from a source within a single state. Maury County also argues that its federal statutory claims cannot be the subject of arbitration because those claims "arise" under a federal statute and thus exist independently of the Water Purchase Contract.

In its reply, Columbia contends that "waterways and water services are part of interstate commerce and can be regulated as such" and that "the Water Purchase Contract between the Parties has a substantial effect on interstate commerce." (Doc. No. 20 at 2-3). Columbia also argues that Maury County's claims "are unequivocally about the Water Purchase Contract" because the "entire dispute centers around who can supply water to whom… which was a main purpose of the Water Purchase Contract when it was signed in 1976." (*Id.* at 4).

"The Sixth Circuit analyzes the following four factors to determine whether to grant motions to dismiss and compel arbitration: (1) Whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration." *Andrews v. TD Ameritrade, Inc.*, 596 Fed. Appx. 366, 371 (6th Cir. 2014) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir.2003)).

Here, there is no question that the parties, via their respective utility boards, entered into an agreement to arbitrate certain disputes. Specifically, the parties agreed to arbitration if they were "unable to agree on any issues or any question arising under" the Water Purchase Contract. (Doc. No. 17 at 1-2; Doc. No. 17-1 at PageID# 111). A fair reading of the Complaint results in the conclusion that Maury County's claims arise from the Water Purchase Contract.

Further, the arbitration provision in the Water Purchase Contract is broad and is not limited to merely contractual disputes. Federal statutory claims can be the subject of arbitration if the parties agreed to that forum. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295-96 (2002). Moreover, Maury County provides the Court with no authority to suggest that Congress intended for claims under either statute at issue to be non-arbitrable. Accordingly, under the applicable factors and the

6

FAA standard, Maury County's claims are subject to arbitration. The Court grants Columbia's motion to compel arbitration and stay this action pending arbitration. The Court denies Columbia's request to dismiss this action.

## IV. CONCLUSION

For the reasons stated above, Columbia's motion (Doc. No. 16) will be **GRANTED** in part and **DENIED** in part.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE